

**SIGNED this 10th day of October, 2013**

_____
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE
### SOUTHERN DIVISION

In re:

|  | |
|---|---|
| | No. 11-16354 |
| ALVIN LEBRON JAMES | Chapter 7 |
| | |
| Debtor. | |

In re:

|  | |
|---|---|
| | No.   12-13300 |
| | Chapter 7 |
| DELORESE JUANETTE JAMES, | |
| | |
| Debtor. | |

1

## MEMORANDUM

The trustees seek substantive consolidation of the two cases in order to sell a condominium owned by the debtors as tenants by the entirety for the benefit of the debtors' joint creditors. Before the court determines whether substantive consolidation is warranted, it must determine whether the trustees can overcome the exemption that each debtor has claimed in their respective entirety interests in the condominium. Mr. Jahn, Mr. James' trustee, has objected to Mr. James' claim of exemption in an interest in the condominium and seeks a finding by this court that his objection is timely because either the exemption was fraudulently asserted or, in the alternative, allowance of the exemption would be a legal fraud or an abuse of process which the court may prohibit under 11 U.S.C. § 105(a). [*In re Alvin James*, Bankr. Case No. 11-16354, Doc. No. 47]. Mr. Farinash, Mrs. James' trustee, has filed an objection to her claim of exemption in her entirety interest in the condominium on the basis that she is not entitled to the exemption under applicable nonbankruptcy law because joint creditors exist, or alternatively, that she should not be allowed an exemption on equitable grounds. [*In re Delorese James*, Bankr. Case No. 12-13300, Doc. No. 16].[1]

Mr. James opposes the relief requested on the basis that he has committed no fraud and his trustee missed the deadline to object to his exemptions. [*In re Alvin James*, Bankr. Case No. 11-16354, Doc. No. 48]. His wife opposes the relief requested on the basis that she committed no fraud and that her husband's discharge left her with no joint creditors. [*In re Delorese James*, Bankr. Case No. 12-13300, Doc. No. 28]. If no joint creditors existed at the time her case was filed, her entirety interest is wholly exempt under Florida law.

Based upon a review of the evidence provided at the hearing, the arguments of counsel and

---

1  The trustee also objected to Mrs. James' exemption of her Individual Retirement Account, Bankr. Case No. 12-13300, Doc. Nos. 22 and 24. The court overruled that objection on February 22, 2013. [*In re Delores James*, Bankr. Case No., Doc. No. 58]. The IRA is not at issue in these proceedings.

the entire record in these contested matters, the court finds that no actual fraud was committed by Mr. James. As such, the court does not find that the exemption was fraudulently asserted by Mr. James. Having missed the deadline to object, Mr. James' trustee has waived his objection to the exemption of $260,000 claimed for the entirety interest. Mr. James has received his discharge, but joint creditors continue to exist to the extent that a joint debt secured by the condominium was reaffirmed and there is any value above $260,000 in the condominium. For these reasons, the objection of Mr. James' trustee will be sustained only as to any value in excess of the amount claimed as exempt.

The legal and equitable reasons for allowing an exemption for Mr. James do not apply to Mrs. James. Her trustee timely filed an objection. Her case was filed within months of her husband's case. Her financial problems arise from joint debt or debt related to Mr. James' business. Her valuation of her interest in the condominium failed to take into account information she received after her husband filed. For Mrs. James to be entitled to an exemption other than that which her husband has already claimed would be an abuse of the bankruptcy process. For these reasons, the objection of Mrs. James' trustee to her exemption will be sustained.

In order to prevent a double exemption on the same property and to preserve the value in excess of the claimed exemption for the benefit of joint creditors, the court finds that limited substantive consolidation is appropriate. The trustees' joint motion to consolidate will be granted in accordance with this memorandum. [Bankr. Case No. 11-16354, Doc. No. 64; Bankr. Case No. 12-13300, Doc. Nos. 62].

These are the court's finding of facts and conclusions of law made pursuant to Fed. R. Bankr. P. 7052 as made applicable to contested matters by Fed. R. Bankr. P. 9014(c). This court

3

has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and § 157(b)(2)(O).

## I.    Facts

Alvin Lebron James filed his individual petition for relief under Chapter 7 of the United States Bankruptcy Code on November 15, 2011. [Bankr. Case No. 11-16354, Doc. No. 1]. Mr. Jahn was appointed as his trustee. Delorese Juanette James, his wife, filed an individual petition for relief under Chapter 7 on June 28, 2012, seven and a half months after Mr. James' filing. [Bankr. Case No. 12-13300, Doc. No. 1]. Mr. Farinash was appointed as trustee for Mrs. James. Both debtors are represented by Thomas E. Ray.

### A.    Mr. James' Schedules

Mr. James filed bankruptcy because his construction company, A.L. James Construction & Development, had failed. The same day he personally filed, he also filed a chapter 7 case for the company. Mr. Jahn was also appointed as the company's trustee. *In re A.L. James Construction and Development, LLC,* Case No. 11-16353 (Bankr. E.D. Tenn.) (J. Cook). In his individual case, the four pieces of real property listed by Mr. James in Schedule A are shown as jointly owned. Schedule A reflects that the values of the four properties total $1,962,000.

Two of the four are significant in the court's analysis. The first is a property in Georgetown Bay Subdivision, Ooltewah, Tennessee (the "Georgetown Property"). He listed the value as $1,200,000 securing a claim of $1,113,714.22 held by Northwest Georgia Bank ("NWGB"). The second piece is a condominium located at 4621 South Atlantic Avenue, Unit 8102, Ponce Inlet, Florida (the "Condominium"). Mr. James listed the Condominium with a value of $260,000 securing a claim of $160,000 also held by NWGB. Hearing Ex. B, Statement of Financial Affairs and Schedules ("Schedules") at 16. The Georgetown Property is significant because when NWGB

4

foreclosed, a deficiency of approximately $600,000 resulted, not equity of $87,000 as Schedule A indicated. The Condominium is significant because the debtor's exemption in this property is the subject of both trustees' objections. The schedule reflects an anticipated deficiency for all the properties of $3,378.37. Schedule D at 22.

On Schedule D—Secured Debt, only three of the four properties were shown as collateral for joint debts with Mrs. James. *Id.* at 22. One debt of $199,433.18, secured by 455 Winding Ridge Road, Lafayette, Georgia, ("Winding Ridge Property") owed to First Horizon/First Tennessee, is shown as only Mr. James' debt. *Id.* The secured debts total $1,778,525.77.

On Schedule F—Creditors Holding Unsecured Nonpriority Claims, Mr. James lists $3,787,914.70 of unsecured debts held by 64 different creditors. Hearing Ex. B, Schedule F. Of these unsecured debts, nine creditors hold debts designated as joint. These nine total $85,501.15 and appear to be credit card debts and have the designation "Business" in the column headed "Date Claim Was Incurred and Consideration for Claim." *Id.*

On February 27, 2012, Mr. James reaffirmed his debt to NWGB on the Condominium for $164,036.17. [Bankr. Case. No. 11-16354, *In re Alvin James*, Doc. No. 40 at 2]. On February 29, 2012, Mr. James received his discharge.

### B.    Mrs. James' Schedules

Mrs. James filed bankruptcy approximately four months after Mr. James' discharge was granted. Her schedules reflected jointly held assets except for jewelry and an IRA. Her liabilities are a subset of those listed in Mr. James' schedules. On Schedule A she listed only the Condominium and the Winding Ridge Property in her Schedule of Real Property. She valued the Condominium at $260,000 with a debt of $160,000. The Georgetown Property is not listed since it

had been foreclosed by NWGB prior to her filing. On Schedule D—Secured Debts, she listed two

debts – the NWGB Condominium debt and the First Horizon/First Tennessee debt secured by the

Winding Ridge Property. The latter debt is described as a nonrecourse joint debt, contrary to her

husband's schedule which reflected it as his individual debt. Hearing Ex. C, Schedule D. On

Schedule F—Unsecured Non Priority Creditors, she lists 27 unsecured creditors, 26 of which were

listed in Mr. James' schedules, totaling $1,753,159.53. The 27th is a servicing address for Bank of

America and appears to have been added only for notice related to two other Bank of America

accounts. The total of her unsecured debts is significantly larger than Mr. James' because it

includes a $600,000 deficiency claim resulting from the foreclosure of the Georgetown Property

by NWGB. Most of the descriptions of the debts contain the word "Business." Compare Hearing

Ex. C at pp. 23-28 with Hearing Ex. B at pp. 25-37. At trial Mrs. James testified that the creditors

she listed for $1.00 were added for notice purposes and she was not really sure whether she was

jointly liable for the debts. The court finds that all of these debts arose from Mr. James' business

since Mrs. James testified that her only employment had been as a bookkeeper for her husband's

business for the last twelve years with no other employment until two weeks prior to the hearing in

this court. Testimony of Delorese James, May 17, 2013 Hearing at 9:38-9:39 a.m.

### C.    Condominium Exemption

In their respective schedules C—Property Claimed as Exempt, both debtors list the

Condominium under the heading "Description of Property." Both claimed 11 U.S.C.

§ 522(b)(3)(B) as the law providing the exemption. Both listed the "Value of the Claimed

Exemption" to be $260,000. Both listed the "Current Value of the Property Without Deducting

Exemption" to be $260,000. Mrs. James also reaffirmed the debt to NWGB secured by the

Condominium. Neither party claimed a homestead exemption under either Tennessee or Florida law.

At the hearing, Mrs. James testified that she and her husband had listed the Condominium for sale prior to her bankruptcy filing. They listed the property for $449,500. She explained that she listed the property for that amount in consultation with her realtor "as a negotiating point." Hearing Ex. 25, Deposition of Delorese James ("D. James Dep."), p. 22, l. 17. The property was on the market for approximately six weeks. *Id.* at 23, l. 3.

### D.    Mrs. James' Filing and the NWGB Deficiency

One debt that is central to the issue of whether equitable remedies are appropriate is the $600,000 deficiency claim owed to NWGB. It was the uncertainty surrounding that debt which Mrs. James testified delayed her decision to file bankruptcy with her husband. Mrs. James testified that she hoped she would never owe a deficiency because she hoped the Georgetown Property would sell for enough at foreclosure to satisfy the debt. Alternatively, she hoped that something could be worked out with NWGB so that the bank would not pursue her for a deficiency if there were one. Only when it became apparent that she would be facing a substantial deficiency did she decide to file. She testified that her attorney Mr. Ray had explained to her the risk of nondischargeable tax debt if the Bank forgave the deficiency and reported that forgiveness of debt as her income. She testified that the risk of tax liability was the reason she ultimately chose to file. Testimony of Delorese James, May 17, 2013 Hearing at 10:08 -10:09 a.m.

The trustees in this case contend that Mrs. James never realistically believed that she could avoid filing bankruptcy; knowing that, she and her husband deliberately filed separately in the hope that they could save the equity in the Condominium for a fresh start. The trustees also

contend that her explanation of why she delayed filing is not credible based on her knowledge of an appraisal showing that a deficiency was likely on the Georgetown Property. The debtors had had an appraisal prepared by Henry Glascock which reflected that the value of the Georgetown Property "as is" was $950,000. That appraisal was completed on June 27, 2011, a date prior to both bankruptcy filings. It indicated that it would cost $50,000 to complete the house in order to achieve the completed value of $1,200,000. Hearing Ex. E, Appraisal of Henry Glascock. Nevertheless, it was the completed value that Mr. James used on his Schedules.

The trustees also offer a Submission of Intent to Purchase the bank's note that was made to NWGB on December 2, 2011, for $767,255. Hearing Ex. H. There was another offer to purchase the bank's note secured by the Georgetown Property for $801,610. Hearing Ex. J. The trustees argue that there were no offers or appraisals that support the debtors' theory that the Georgetown Property was ever worth $1,200,000.

Finally, the trustees point to the explanation given by Mrs. James for changing her mind and filing when she did. She testified that she did not want to file because she thought that NWGB would not have a deficiency against her. When it did, she testified that her attorney told her that she should file to avoid tax liabilities if NWGB changed its mind and forgave her debt. The tax liability that would be created as a result of the forgiveness of indebtedness outside of bankruptcy "freaked her out." Testimony of Delorese James, May 17, 2013 Hearing at 10:08 -10:09 a.m.

The court has doubts about this explanation. According to her testimony, NWGB repeatedly refused to negotiate to release her. All of the parties were aware of the Glascock appraisal and the lower offers for the note before the foreclosure sale occurred. The risk of tax exposure existed well before the foreclosure sale occurred. Mrs. James' credibility is further in

8

question when her optimism about the Georgetown Property is compared to her apparent

pessimism about the value of the Condominium. Mrs. James and her husband listed the

Condominium for sale at $449,500, almost $200,000 more than she reflected as the value on her

schedules. At her deposition, she testified that she had just gotten an appraisal from NWGB for

$275,000 when she was preparing her schedules. Hearing Ex. 25, D. James Dep., p. 22. The

trustees provided emails between Mrs. James and her counsel that indicate the Condominium was

of great concern to the debtors. Hearing Ex. F, Email String between John Beard, counsel for

Construction Company, and Tom Ray regarding Condominium dated Sept. 12, 2011; Hearing Ex.

L, Email from Delorese James to Tom Ray dated June 12, 2012 containing inquiry about NWGB

mortgage. Her reasons for the delay in filing, her valuation of the Condominium, and the similarity

of her obligations to those of her husband are all factors the court has considered in finding that her

additional claim of a $260,000 exemption is an abuse of the bankruptcy process and limited

substantive consolidation is appropriate.

##       II.       Issues

Prior to addressing substantive consolidation, the court will consider the objection to the

parties' claim of exemption under Section 522(b)(3)(B). As to Mr. James, the court will address

whether Mr. James' trustee has waived any objection to the exemption in the entirety property by

failing to object in a timely manner. If the court finds that Mr. James' trustee may pursue even a

part of the Condominium or its value, then the court must determine whether Mrs. James may

exempt any interest in the Condominium. If after determining that there remains an interest to be

administered, the court will determine whether the cases should be consolidated and to what

extent.

### III.    Analysis

### A.    Objection to the Exemption of Mr. James

### 1.    Exemption of Tenancy by the Entirety Property

When a debtor files bankruptcy, a bankruptcy estate is established which includes all property in which the debtor has a legal or equitable interest as of the petition date. 11 U.S.C. § 541(a)(1) (2012). The debtor may remove certain property from that bankruptcy estate pursuant to the exemptions allowed by 11 U.S.C. § 522. There are two choices for exemptions contained in Section 522. 11 U.S.C. § 522(b)(1). The first is a list of specific federal exemptions found in subparagraph (d). 11 U.S.C. § 522(b)(2). The other list, found in subparagraph (b)(3), incorporates a state's exemptions[2] and includes property that qualifies for exemption under Section 522(b)(3)(B) and (C). A prerequisite to a debtor's right to use a state's exemption list is that the debtor must have been domiciled in that state for the 730 days prior to his or her filing. If the debtor has not been located in one place for that period, the court looks to his or her domicile during the 180 days prior to the 730 day period. If the effect of this domiciliary requirement under subparagraph (b)(3)(A) is to render the debtor ineligible for any exemption, the debtor may elect to exempt property under section 522(d). The states may also limit their citizens' alternatives for exemptions to only the second one by "opting out" of the federal list found in subparagraph (d).

In order to claim those exemptions, the debtor is required to "file a list of property that the debtor claims as exempt under subsection (b)" of section 522. 11 U.S.C. § 522(l). Unless a party in interest objects, the property claimed as exempt on such list is exempt. *Id.* "Unless the case is

---

2 Subparagraph 522(b)(3)(A) also allows the exemption of property that is exempt under other federal laws. For a listing of other federal exemptions, *see* 16 WILLIAM H. BROWN, NANCY FRAAS MACLEAN, AND LAWRENCE A. AHERN, III, TENNESSEE PRACTICE SERIES, DEBTOR-CREDITOR LAW § 15.34 (2d ed. 2012). Those exemptions are not at issue in this matter.

dismissed, property exempted under this section [11 U.S.C. § 522] is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case…." 11 U.S.C. § 522(c).

At issue in this case is the exemption allowed by subsection 522(b)(3)(B). It authorizes a debtor to remove from his/her bankruptcy estate, "any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety… to the extent that such interest as a tenant by the entirety… is exempt from process under applicable nonbankruptcy law." 11 U.S.C. § 522(b)(3)(B).

Mr. and Mrs. James chose Section 522(b)(3)(B) as their basis to exempt the Condominium. They hold an interest in the Condominium as tenants by the entirety. There is no issue about the type of interest they hold. They acquired the property while they were married, and titled it in their names prior to the filing of his bankruptcy case. *Beal Bank SSB v. Almand & Assocs.*, 780 So.2d 45, 52 (Fla. 2001) (listing requirements for tenancy by the entirety property). If Florida law treats this property interest as exempt from process, they would be entitled to exempt "any interest in property in which [he] had, immediately before the commencement of the case, an interest as a tenant by the entirety… to the extent that such interest as a tenant by the entirety … is exempt from process under applicable nonbankruptcy law." 11 U.S.C. § 522(b)(3)(B).

    a.    *Applicable Nonbankruptcy Law for Entirety Property Exemption*

To determine whether the Condominium is exempt from process, the court will look to the law of the situs of the real property. In this case that is Florida. "Under Florida law, entireties property is exempt from process to satisfy debts owed to individual creditors of either spouse. Entireties property is *not* exempt from process to satisfy the joint debts of both spouses." *See In re*

*Monzon*, 214 B.R. 38, 40-41 (Bankr. S.D. Fla. 1997) (citing *Neu v. Andrews*, 528 So.2d 1278, 1279

(Fla. Dist. Ct. App. 1988) and *Stanley v. Powers*, 166 So. 843, 846 (Fla. 1936) (holding that a

judgment debt against both spouses can be satisfied by selling the entireties property)). "Courts

have generally recognized that § 522(b)[(3)](B),[3] read in conjunction with applicable Florida law,

precludes the debtor from exempting a portion of his entireties property where joint creditors of

both spouses exist at the time of filing." *In re Monzon*, 214 B.R. at 41. The debtor may have some

exemption to the extent that there is equity in the property over and above the claims of joint

creditors. "The debtor does not lose all benefit of exemption under 11 U.S.C. § 522(b)[(3)](B)

when joint creditors are present; he loses the exemption as to the extent of the joint creditors and

their claims." *Pepenella v. Life Ins. Co. of Georgia (In re Pepenella)*, 103 B.R. 299, 302 (M.D. Fla.

1988); *see also, In re McRae*, 308 B.R. 572 (N.D. Fla. 2003); *In re Helm*, No. 11-18801-EPK,

2012 WL 1616791 (Bankr. S.D. Fla. May 9, 2012). *But see In re Anderson*, 132 B.R. 657, 659-60

(Bankr. M.D. Fla. 1991) (existence of joint judgment defeats "exemption", trustee may distribute

proceeds to all creditors). While the Florida federal courts may disagree about which creditors may

be paid from the proceeds, there is little disagreement in their holdings that the existence of joint

creditors will defeat the exemption of the entirety interest to the extent of the joint debt. *In re*

*McRae*, 308 B.R. 572; *In re Planas*, No. 98-0506-CIV-NESBITT, 1998 WL 757988, at *3-4 (S.D.

Fla. Aug. 21, 1998); *In re Ciccarello*, 76 B.R. 848, 850 (Bankr. M.D. Fla. 1987);   *In re Koehler*, 6

B.R. 203, 206 (Bankr. M.D. Fla. 1980).

---

3 The *Monzon* case refers to Subsection 522(b)(2)(B). *See In re Monzon*, 214 B.R. at 41. The section number was changed to 522(b)(3)(B) without amendment to the text in 2005 by the Bankruptcy Abuse Prevention and Consumer Protections Act of 2005. 4 COLLIER ON BANKRUPTCY ¶ 522.LH[5] (16th ed. 2013). In order to avoid confusion, the court will use the current designation of the subsection and indicate the change from the quotation from the case by brackets.

b.     *Procedure for Preventing Exemption of Entirety Property Where Joint Creditors Exist*

The disallowance of an exemption requires the trustee or a creditor to object to the exemption. With respect to this exemption specifically, the Sixth Circuit has held that the appropriate procedure for preventing entirety property from escaping the claims of joint creditors is an objection to the exemption. *Liberty State Bank and Trust v. Grosslight (In re Grosslight),* 757 F.2d 773, 777 (6th Cir. 1985). "Rule 4003(b) gives the trustee and creditors 30 days from the initial creditors' meeting to object. By negative implication, the Rule indicates that creditors may not object after 30 days, 'unless, within such period, further time is granted by the court.'" *Taylor v. Freeland & Kronz,* 503 U.S. 638, 643, 112 S.Ct. 1644, 1648 (1992); Fed. R. Bankr. P. 4003(b).

Mr. Jahn did not object to the exemption within the thirty day time limit of Fed. R. Bankr. P. 4003(b)(1). He did, however file an Objection to Homestead Exemption[4] on September 17, 2012. [Bankr. Case No. 11-16354, Doc. No. 47]. In order to prevent the property claimed as exempt from leaving the estate free of the claims of Mr. James' joint creditors, Mr. Jahn must find an exception to the thirty day time limit. He raises several theories which he argues provide grounds for sustaining his objection.

c.     *Exceptions to Thirty Day Time Limit*

i.     <u>Fraudulent Assertion of Exemption</u>

Rule 4003 does have an additional window within which a trustee may file an objection if the debtor fraudulently asserted the claim of exemption. The rule provides that he "may file an objection to a claim of exemption at any time prior to one year after the closing of the case." Fed.R.

---

4 The court would note that Mr. James did not claim a homestead exemption under Tennessee or Florida law for this property. He relied on the bankruptcy exemption for tenants by the entirety property. Although the trustee did not cite Section 522(b)(3)(B) in his objection, he did correctly identify the property and the value claimed as exempt from the estate. All of the parties at the hearing treated his objection as referring to the Section 522(b)(3)(B) exemption.

13

Bankr. 4003(b)(2). Mr. James' case has not closed, so the objection is timely if the court finds that exemption was asserted fraudulently. It is the trustee's burden of proof to show that the exemption is not properly claimed. Fed. R. Bankr. P. 4003(c).

Mr. James denies that he fraudulently asserted his entirety exemption. He disclosed his entirety interest. He made no effort to mislead the trustee about his intention to exempt his entirety interest in a valuable condominium. He claimed the exemption in his initial filings and properly described the basis of the exemption. He designated numerous creditors as joint creditors and listed his wife as a co-obligor on Schedule H. There was no evidence that Mr. James had independent knowledge that the Condominium was worth more than the number he placed on his Schedules or that he directed his wife to wait to file. The court cannot find that he withheld any information or knowingly provided any inaccurate information to the trustee.

Mr. Jahn testified that he was aware of the existence of the Condominium and that the Schedule D showed that there was approximately $100,000 of equity in the Condominium. He admitted that he believed $100,000 was a significant number, but that he made a conscious decision not to object to the exemption. He "downgraded" the value stated in Mr. James' Schedules based on the depressed real estate market and his own experience with the "poor" Florida real estate market. He made no effort to verify the value from an independent source. He further felt that the federal exemption created some "legal issues to deal with." It was a combination of these factors that led to his "judgment call" that it was impractical to pursue the Condominium. Testimony of Richard P. Jahn, May 17, 2013 Hearing at 9:17-9:18 a.m. He has not attempted to sell the Condominium to satisfy the claims of unsecured joint creditors. His objection appears to have been filed when he learned that Mrs. James had followed her husband into

14

bankruptcy and that the parties had listed the Condominium for sale for $449,500.00 immediately prior to her filing.

The act by Mr. James that gives the court pause is Mr. James' statement in Schedule C that the value of his exemption is $260,000. Under Florida law, he was only entitled to claim the value of the equity after the deduction of the claims of joint creditors. *See Stanley*, 166 So. at 846. That is the only amount that would have been immune from process under applicable nonbankruptcy law pursuant to 11 U.S.C. § 522(b)(3)(B). He listed the value of the Condominium at $260,000. He clearly was aware of the existence of joint creditors. He listed nine creditors as joint. In fact, he had listed $88,000 of joint unsecured debts on Schedule D and F. There was also a lien on the Condominium for $160,000 owed by both him and his wife. Hearing Ex. B, Alvin James' Schedules; Hearing Ex. 26, Deposition of Alvin James, p. 22, l. 1-11 (negotiations between NWGB and Mr. James regarding the release of his wife's guaranty on the Georgetown Property). Using those amounts from his sworn schedules, he should have arrived at a dollar value for the exemption of $12,000, derived by using his value of $260,000 less joint debt mortgage of $160,000 and less $88,000 of scheduled unsecured joint debt. There was no testimony about how the value of the exemption was determined, and no objection was filed to the amount. When the court weighs an aggressive claim to an exemption against the current bankruptcy law on requirements for claiming exemptions discussed below, the trustee's awareness of the equity in the Condominium and the full disclosure of joint debt, the court does not find that the single overstatement of the value of the claimed exemption rises to the level of a fraudulent assertion of an exemption.

ii.    Equitable Theories to Extend Deadline to Object

Since the court has not found actual fraud, the trustees contend that the court should employ an equitable doctrine to allow Mr. James' trustee additional time to object to the exemption. A review of the statutory history and case law dealing with this issue causes the court to question the extent to which equitable theories may be used to extend a trustee's deadline.

One theory utilized to bring jointly held property into an estate for the benefit of joint creditors is legal fraud. Black's Law Dictionary defines *legal fraud*, also known as constructive fraud or equitable fraud, as the "[u]nintentional deception or misrepresentation that causes injury to another." The definition recites that "[i]n equity law the term fraud has a wider sense, and includes all acts, omissions, or concealments by which one person obtains an advantage against conscience over another, or which equity or public policy forbids as being to another's prejudice; as acting in violation of trust and confidence." BLACK'S LAW DICTIONARY (9th ed. 2009) (citing ENCYCLOPEDIA OF CRIMINOLOGY 175 (Vernon C. Branham & Samuel B. Kutash eds., 1949)). Courts have applied this concept to situations in which a husband and wife have equity in a property held by them as tenants by the entireties which they prevent joint creditors from reaching by filing their bankruptcy petitions separately. One of the leading cases applying the doctrine of legal fraud to bring back the joint property into the bankruptcy estates for the benefit of joint creditors is the case of *Reid v. Richardson,* 304 F.2d 351, 355 (4th Cir. 1962). In that case, the Circuit Court affirmed a bankruptcy court which had used its equitable powers to re-open a husband's case and consolidate it with his wife's case "for the sole purpose of permitting the enforcement in the Bankruptcy Court of the joint claims against the entireties property." *Id.* at 353.

The ruling in *Reid* must be considered in the context of bankruptcy law as it existed at that

time. Prior to the enactment of the Bankruptcy Code in 1978, entireties property did not come into

the bankruptcy estate unless the property was subject to the claims of the debtor's individual

creditors under applicable nonbankruptcy law. Therefore, even if joint creditors existed, the

entireties property was not part of the estate. When the debtor's discharge was entered, the joint

creditors' claims were extinguished; and they were prohibited from pursuing the entireties

property of the nondebtor spouse because they were no longer joint creditors. "The effect of the

coincidental interrelation of these rules of law is to allow the tenants by the entireties to keep the

entireties property secure from the claims of their creditors even though that property was never

available in bankruptcy for the satisfaction of those claims." *Reid*, 304 F.2d at 354-55. *Reid* relied

on an earlier case which had framed the problem as follows:

> The question presented is whether, without giving these creditors an opportunity to
> proceed, the court should grant the discharge knowing that it will result in a legal
> fraud, i.e. the effectual withdrawing of the property from the reach of those entitled
> to subject it to their claims, for the beneficial ownership and possession of those
> who created the claims against it. We cannot conceive that any court would lend its
> aid to the accomplishment of a result so shocking to the conscience.

*Reid*, 304 F.2d at 354 (quoting *Phillips v. Krakower*, 46 F.2d 764, 765 (4th Cir. 1931)).

Approximately thirty years later a Circuit Court described the legal fraud doctrine discussed in

*Reid* as follows:

> Under this pre-Code scheme, there was a potential for legal fraud against joint
> creditors of a husband and wife. The couple could shelter their assets as
> unencumbered entirety property, then one spouse could file bankruptcy and obtain
> a release from his share of all joint debts without exposing the entirety property to
> any claims because it would not enter the bankruptcy estate. After bankruptcy, all
> joint creditors could sue only the remaining spouse, a judgment against whom
> would be ineffective as against the entirety property. This was the situation
> recognized by the Fourth Circuit in *Reid.*

*In re Hunter*, 970 F.2d 299, 302 (7th Cir. 1992).

17

In 1978, the Bankruptcy Code changed the treatment of entireties property. If the debtor had any legal or equitable interest in property, it became part of the estate upon filing. 11 U.S.C. § 541(a); *In re Grosslight*, 757 F.2d at 775. If the property was not subject to process by the debtor's creditors, then the debtor could remove it from the estate by claiming an exemption in the interest. The trustee could object and prevent the removal. Additional changes to the treatment of entireties property in the Bankruptcy Code allowed the trustee to sell both the estate's interest and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant by the entirety. 11 U.S.C. § 363(h); *In re Grosslight*, 757 F.2d at 776. He could then distribute the proceeds to the estate's joint creditors.[5]

The statutory changes did not clarify how joint creditors should procedurally protect their interests in order to prevent the "legal fraud" that might arise from spouses filing separately. Courts disagreed on how a joint creditor could preserve its claim when only one of the joint debtors was in bankruptcy. The Fourth Circuit continued the pre-Code practice of requiring a creditor to lift the automatic stay and seek a deferral of the discharge while joint creditors proceeded to seek a remedy in state court. *See, In re Grosslight*, 757 F.2d at 776 (citing *Sovran Bank, N.A. v. Anderson*, 743 F.2d 223, 224 (4th Cir. 1984) and *Chippenham Hospital, Inc. v. Bondurant*, 716 F.2d 1057, 1059 (4th Cir. 1983)). The Third Circuit approached the problem differently. It held that "a creditor with a judgment on a joint debt may levy upon the property itself and thus on the interests of both spouses. The debtor's interest in that portion of entireties property reachable by joint creditors therefore is not exempt." *In re Grosslight*, 757 F.2d at 776 (citing *Napotnik v. Equibank & Parkvale Savings Ass'n*, 679 F.2d 316, 320-22 (3d Cir. 1982)). The Sixth

---

5 For a thorough analysis of the impact the bankruptcy changes made on the treatment of entireties property, see *In re Hunter*, 122 B.R.349, 353-358 (Bankr. N.D. Ind. 1990), *aff'd, In re Hunter*, 970 F.2d 299 (7th Cir. 1992).

18

Circuit followed the Third Circuit and found that the entireties property was included in the estate. To the extent that all or a portion of the debtor's interest was not subject to process by all or a group of his creditors, the debtor was required to claim an exemption in that portion. If a creditor or trustee did not want the property interest to be removed from the reach of one or more of the creditors, the trustee or creditor would be required to object to the exemption. *In re Grosslight,* 757 F.2d at 777.

Even though a joint creditor may lose the ability to reach jointly held property, the doctrine of legal fraud has not been applied in cases in which only one spouse files, and a joint creditor is seeking to avoid the effect of the filing debtor's discharge on the creditor's ability to reach jointly held property. In *In re Paeplow*, 972 F.2d 730, 735 (7th Cir. 1992), the court upheld an injunction prohibiting the discharged joint creditor from proceeding in rem against entirety property finding that "the rationale underlying the pre-Code Indiana decisions" was no longer "viable." *Id.* at 735. In *In re Hunter*, 970 F.2d 299 (7th Cir. 1992), the court held that bank could not pursue post-discharge suit against entireties property based on Indiana exemption of entireties property. *See also, Munoz v. Dembs (In re Dembs)*, 757 F.2d 777, 780 (6th Cir. 1985), *abrogated by Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992) (noting that "[t]he clear import of the new rule and of section 522(l) is that objections to claimed exemptions must be made within thirty days after the creditors' meeting or any amendment, or they are waived." Efforts of a joint creditor to reach exempted entireties property were not allowed after discharge had been granted).

Courts have been more willing to step in when the other spouse files later. Courts have not been comfortable with a result that allows debtors to keep property which joint creditors should have been able to reach when a trustee or creditors fail to object. To prevent the "shocking" result

19

described in *Reid v. Richardson*, they have looked to 11 U.S.C. § 105(a), § 350(b) or equity in general to prevent a harsh result in cases where one spouse has successfully exempted his entirety interest from his joint creditors and received a discharge and then the other spouse files. *Ragsdale v. Genesco, Inc.*, 674 F.2d 277 (4th Cir. 1982) (bankruptcy court had authority under Section 105(a) to allow a late-filed objection to the exemption); *Dickenson v. Penland (In re Penland)*, 34 B.R. 536, 542 (Bankr. E.D. Tenn. 1983) (late-filed objection to exemption allowed in husband's case after wife filed with court noting that "[e]quity disfavors allowing exemptions to a debtor to which he is not entitled"); *In re Monzon,* 27 B.R. 50 (Bankr. S.D. Fla. 1983); *In re Virgil,* 23 B.R. 172 (Bankr. D. Colo. 1982); *In re Shelton*, 201 B.R. 147 (Bankr. E.D. Va. 1996) (court reopened husband's closed case in which entirety property had been claimed as exempt, no objection to exemption filed, discharge granted and case closed to allow consolidation with wife's case filed nineteen months after husband's case had been filed finding an attempt to commit legal fraud; schedules showed contradictions regarding identity of joint creditors).

The Sixth Circuit has also struggled with the equity of a debtor receiving an exemption to which he was not entitled. In a 1985 case in which the debtor claimed an exemption in his entirety interest and there was no objection, the Sixth Circuit Court of Appeals refused to allow a joint creditor to proceed against the entireties property after the discharge had been granted. The court found that the objection to the exemption had been waived. *In re Dembs*, 757 F.2d 777. The court was aware of the potential for abuse that an absolute bar to late-filed objections to exemptions might have. It tempered its waiver ruling by stating that:

> We do not mean by this to endorse 'exemption by declaration'; there must be a *good faith* statutory basis for exemption, and in that respect we fully approve *In re Bennett*, 36 B.R. 893, 895 (Bankr. W.D. Ky. 1984). But where the validity of an exemption is uncertain under existing law, or where, as in *Grosslight*, it is the

special character of the creditor that prevents the exemption, the creditor cannot rest on his rights in the face of Rule 4003(b).

*In re Dembs*, 757 F.2d at 780 (emphasis added).

In 1992, the "good faith" prerequisite recognized in *In re Dembs* was challenged in a Supreme Court case addressing a trustee's ability to file a late-filed objection. *Taylor*, 503 U.S. 638. As part of its analysis, the Supreme Court specifically addressed the good faith requirement noted by the Sixth Circuit in *In re Dembs*, 757 F.2d at 780. *Taylor*, 503 U.S. at 643. The majority rejected an interpretation of Section 522(l) that required the debtor to claim an exemption in good faith. The majority concluded that the failure to object within thirty days or to obtain an extension within that time period resulted in the property being exempt "whether or not [the debtor] had a colorable statutory basis for claiming [the exemption.]" *Id.* at 644. In fact, in *Taylor*, the parties had agreed that the debtor did not have a right to exempt more than a small portion of the proceeds from the lawsuit she had claimed as wholly exempt under state law or under the federal exemptions. *Id.* at 642. The dissent argued that equitable doctrines such as tolling could have been used to extend the deadline. *Id.* at 646-48 (Stevens, J., dissenting). This court's reading of the majority's ruling and its rejection of the equitable theories raised by the dissent is that equitable remedies to extend the deadline to object to exemptions are severely limited, if not abrogated, if the deadline is missed.

The Supreme Court did leave one option open. The Court specifically declined to address whether Section 105(a) provided an independent basis for allowing the late-filed objection because the trustee had failed to raise it in the lower courts. Since *Taylor*, Section 105(a) has been used by another bankruptcy court in this Circuit when faced with an unusual claim of exemption and a late-filed objection. In that case the debtor both claimed an exemption and also denied

owning residential property. *In re Montanez*, 233 B.R. 791 (Bankr. E.D. Mich. 1999). The case before the court is factually different. Although Mr. James did not have a right to claim his whole entirety interest in light of the existence of joint creditors, he never claimed that (a) he did not own the property, (b) his exemption had no value or (3) joint creditors did not exist. Based on the holding in *Taylor*, the lack of a timely objection by any creditor or the trustee, and insufficient evidence that Mr. James' filing was an abuse of the bankruptcy process, the court declines to use any equitable remedy or its power under 11 U.S.C. § 105 to allow the trustee to extend the deadline to object to Mr. James' exemption.

### 2.    Exemption of the Asset or an Interest in the Asset

There is still a question of whether there is any interest in the Condominium that has not been exempted. This question arises from the Supreme Court's ruling clarifying the extent of the *Taylor* holding. *Schwab v. Reilly*, 560 U.S. 770, 130 S.Ct. 2652 (2010). In *Schwab*, the Supreme Court differentiated between an exemption of a specific asset, i.e., an "in kind" exemption, and an exemption of an interest in that asset that was subject to a monetary cap. The Supreme Court reversed the lower court's denial of a trustee's request to sell personal property claimed by the debtor as exempt, even though the trustee had failed to object within the time limit prescribed by Rule 4003. The court held that "an interested party need not object to an exemption claimed" by the debtor's listing the value of the asset as the maximum value allowed by a statutory exemption "in order to preserve the estate's ability to recover value in the asset beyond the dollar value the debtor expressly declared exempt." *Id.* at 2657. The Supreme Court analyzed what the debtor had exempted on Schedule C and noted that there is a difference in exempting an asset and exempting an interest in the asset. *Id.* at 2660. The Court relied on the statute's specific use of the term "an

interest in" in the description of the exemption and the existence of a monetary cap, to conclude

that the exemptions as filed did not create an obligation on the part of the trustee to object. Since

there was no exemption claimed in excess of the exemption limit, the court found there was

nothing objectionable in the exemptions as filed and the objection deadline discussed in *Taylor*

was "inapplicable." *Id.* at 2667.

In *Schwab*, the value of the personal property turned out to exceed by several thousand

dollars the exempted value. The exempted value equaled the maximum allowed by the statutory

exemption.

The trustees in this case allege that the value of the entirety interest exceeds the valued

claimed as exempt. The listing agreement for $449,500 raises the question of whether the value of

the Condominium is substantially more than the amount of the exemption claimed. If there is value

above the exemption, Mr. James' trustee may administer that property interest. To the extent that

there is additional value, the objection deadline is inapplicable to that portion that has not been

exempted.

Section 522(b)(3)(B), the statutory exemption in question, uses the term "interest in"; and,

while it does not have a monetary cap, it does contain the limiting language that the exemption is

limited "to the extent" that the interest is not subject to process under applicable nonbankruptcy

law. 11 U.S.C. § 522(b)(3)(B). If the court applies the same analysis as the *Schwab* court did to the

exemption claim, there is an interest remaining in his estate if the Condominium value exceeds

$260,000. Mr. James claimed his entirety interest in the Condominium based on the exemption of

Section 522(b)(3)(B). That provision entitled him to exempt "an interest in property" which he

held prepetition as a tenant by the entirety "to the extent" that it was exempt from process. The

23

court does not view the language of Section 522(b)(3)(B) as substantially different from those exemptions of "an interest in property, not to exceed" a specific value. To the extent that Mr. James has limited his exemption to the value of $260,000, his trustee may still seek to recover the value of the entirety interest, which remains property of the estate, in excess of his claimed exemption for the benefit of his joint creditors. If the Condominium sells for $449,500, the joint lien creditor, whose debt was reaffirmed and was in existence when Mrs. James filed, will receive approximately $160,000. Mr. James will receive the difference between the lien payoff and $260,000, receiving the value of the exemption he claimed. The remaining balance will go to pay the claims of joint creditors. Whether the trustee pursues the sale will be a matter for his consideration after further investigation regarding the value. In conclusion, therefore, the court will sustain the objection of Mr. James' trustee to the exemption to the extent that there is value in the Condominium in excess of $260,000.

### B.      Objection to Exemption of Delorese James

The situation in Mrs. James' case is different. There is no issue about the timeliness of the objection to her exemption. Mr. Farinash has objected that she is not entitled to exempt her tenancy by the entirety property when she designated twenty-one creditors holding joint debt in her schedules, one of which she listed for an amount in excess of the total amount she claimed as exempt. At the hearing she contended that no joint debts with her husband existed because he had received a discharge. The court does not find that to be accurate. He reaffirmed his debt to NWGB and that joint debt was in existence when she filed. At a minimum, her exemption would have been subject to that debt. Furthermore, to the extent that there is an interest in the Condominium remaining in Mr. James' estate, joint creditors may be paid from proceeds of that interest without a

need to violate the discharge injunction. *Meyer v. Hammes*, 187 B.R. 281, 286 (S.D. Ind. 1995). The court also has questions about the good faith of the amount of her claim of exemption since she had the benefit of an appraisal, the advice of a realtor regarding the listing value, and her husband's reaffirmation of the mortgage securing the Condominium. For these reasons, the court will sustain the objection to her exemption.

### C.    Motion to Consolidate

The court has found that there may be an interest in the Condominium for the trustees to pursue. The court will therefore consider a motion for substantive consolidation of the two cases. In a case involving a request by a creditor to consolidate a husband's chapter 7 case with that of his spouse in a jointly filed case, the Eleventh Circuit discussed the various theories of substantive consolidation. *Reider v. Federal Deposit Ins. Co. (In re Reider)*, 31 F.3d 1102 (11th Cir. 1994). There, the Eleventh Circuit noted that while few courts have analyzed substantive consolidation with respect to debtor spouses, "[t]hree cases have formulated the following rule: '[c]ases should be consolidated where the affairs of the husband and wife are so intermingled that their respective assets and liabilities cannot be separated.'" *Id.* at 1108 (quoting *Chan v. Austin Bank of Chicago (In re Chan),* 113 B.R. 427, 428 (N.D. Ill. 1990) and citing *In re Birch,* 72 B.R. 103, 106 (Bankr. D.N.H. 1987); *In re Barnes,* 14 B.R. 788, 790 (Bankr. N.D. Tex. 1981)). The Court then concluded that such analysis, while necessary, should not be the "sole test." *In re Reider*, 31 F.3d at 1108. Instead, the Court noted, "the ultimate answer to the question of substantive consolidation requires the court to weigh 'the economic prejudice of continued debtor separateness versus the economic prejudice of consolidation.' " *Id.* (relying on *In re Steury,* 94 B.R. 553, 554 (Bankr. N.D. Ind. 1988) and *Eastgroup Properties v. Southern Motel Assoc., Ltd.*, 935 F.2d 245, 249 (11th Cir.

1991)). The Court determined that prior case law was of limited utility and that it needed to

determine "what equity requires." *In re Reider*, 31 F.3d at 1108.

The Eleventh Circuit then adopted a two part-test for determining whether substantive

consolidation is appropriate:

> In assessing the propriety of substantive consolidation, a court must determine: (1)
> whether there is a substantial identity between the assets, liabilities, and handling of
> financial affairs between the debtor spouses; and (2) whether harm will result from
> permitting or denying consolidation. In assessing the extent of substantial identity,
> relevant factors will include the extent of jointly held property and the amount of
> joint-owed debts. Upon a determination of substantial identity, the court must then
> analyze the harm attendant to a failure to consolidate. Where administrative
> difficulties in disentangling the spouses' estates makes it prohibitively expensive or
> where disentanglement is otherwise impracticable, consolidation should ordinarily
> be permitted. A creditor may also demonstrate that it will be unfairly prejudiced by
> a failure to consolidate and may interpose the fraud or bad faith of the debtors as a
> defense. To prevent consolidation, a creditor may demonstrate that it has relied on
> the separate credit and assets of one of the spouses and would be harmed by a
> consolidation of assets. The burden is upon the proponent of a motion for
> consolidation and is exacting. Ultimately, the court must be persuaded that " 'the
> creditors will suffer greater prejudice in the absence of consolidation than the
> debtors (and any objecting creditors) will suffer from its imposition.' " Substantive
> consolidation should be invoked "sparingly" where any creditor or debtor objects
> to its use.

*In re Reider*, 31 F.3d at 1108-9 (citations and footnotes omitted).

In absence of any controlling law in the Sixth Circuit, the court finds the *Reider* court's

discussion of considerations helpful. Applying the first consideration noted above, the court finds

that there is substantial identity between the assets, liabilities and handling of financial affairs

between the debtor spouses. Mrs. James' creditors are all listed in Mr. James' schedules. All of

Mrs. James' creditors are related to Mr. James or his business. The court also finds that Mrs.

James' filing was necessitated by Mr. James' filing and his failed business. There is very little

personal property which is owned individually, and it has already been exempted or the objection

to its exemption has been overruled. *See* [Bankr. Case No. 12-13300, Doc. Nos. 58, 59

(memorandum and order overruling trustee's objection to Mrs. James' exemption of her Individual

Retirement Account)].

With respect to the second consideration, the court must weigh the relative harm resulting

from failure to consolidate with the harm resulting from consolidation. The only benefit that the

trustees are seeking to obtain through consolidation is the ability to extract the value of the

Condominium in excess of the first mortgage for the benefit of joint creditors. That result would

prevent the debtors from achieving a result through separate bankruptcy filings that they would not

have been able to achieve outside of bankruptcy or through a joint filing. However, Mr. James

opposes the consolidation on the basis that it would effectively revoke Mr. James' discharge and

make property which he exempted without objection subject to the claims of creditors whose debts

have been discharged. Further, this revocation would occur without a court finding that he had

committed any of the acts that may be the grounds for revocation of discharge found in 11 U.S.C.

§ 727(d). The court finds these to be significant facts which weigh against consolidation.

As for Mrs. James, her opposition that she should benefit from the discharge of Mr. James'

joint creditors does not merit the same level of deference. Her reason for filing separately is

questionable in light of the interrelationship of her financial situation with that of Mr. James, and

the court may consider whether allowing separate administration of her estate would be an abuse

of the bankruptcy process. Her disclosures about the Condominium are more suspect. She had

more information regarding the value of the Condominium, but failed to disclose it in her

schedules. Her trustee timely objected to the exemption to which she would not be entitled but for

her husband's discharge. Failing to consolidate the cases also leaves open the issue of whether she

would be entitled to an additional $260,000 exemption in the Condominium resulting in nothing

27

for her joint creditors. In a case in which the trustee did not miss his deadline, such a result would be shocking to the court, and the court finds that allowing her case to proceed separately would be an abuse of the bankruptcy process.

The court can prevent such a result without disregarding the holding in *Taylor*. Consolidation is not "an all or nothing proposition." *In re Steury*, 94 B.R. at 556. In *Steury*, the court found that there was no need for total consolidation of the two estates. There was a need to consolidate the estates to the extent that joint creditors could share in the proceeds of entireties real estate. *Id.* at 557. The court finds that limited consolidation of the cases is appropriate here. The cases will be consolidated for the administration of the value of the Condominium in excess of the $260,000 and consolidation of the exemption allowed under Section 522(b)(3)(B). The cases will also be consolidated for the purpose of distributing proceeds from the Condominium to the lien creditor, to Mr. James for his exemption, and to their creditors who were owed by both Mr. and Mrs. James at the time of either debtors' filings. Therefore, the court will grant the joint motion of the trustees to consolidate the two debtors' separate bankruptcy cases in the case of Alvin Lebron James, Bankruptcy Case No. 11-16354, for these limited purposes.

A limited consolidation does not alter Mr. James' exemption or discharge. It allows both debtors to share a consolidated exemption of $100,000 of their entirety interest in the Condominium. It prevents Mrs. James from receiving a windfall at the expense of joint creditors to the extent there is value in excess of the exemption to which they would be entitled under applicable nonbankruptcy law. It does not provide a windfall to creditors of only one debtor. Finally, it does not reward creditors or trustees who fail to object within the time limits set for Rule 4003.

28

## IV.    Conclusion

In conclusion the court will sustain Mr. James' trustee's objection to Mr. James' exemption but only to the extent that there is value in the Condominium in excess of $260,000. The objection of Mrs. James' trustee to her additional exemption in the Condominium will be sustained. The motion to consolidate will be granted in part to provide for the limited consolidation of the two cases. The court will order the limited consolidation of the two cases in the case of Alvin Lebron James, Bankruptcy Case No. 11-16354, to provide for: (a) the consolidation of the debtors' exemption in the Condominium equal to the value of the Condominium in excess of the lien of NWGB up to $260,000; (b) the administration of the estates' remaining interest in the Condominium; (c) the determination of allowed claims of creditors owed by both debtors on the commencement of their cases; and (d) the distribution to those joint creditors of the proceeds of the administration of the estates' remaining interest in the Condominium.

A separate order will enter.

# # #